CHRISTOPHER S. MILLS, Plaintiff-Appellee, v. RYAN D. McDUFFA, Defendant-Appellant.

Second District   No. 2—08—0305

Opinion filed July 21, 2009.

Jeffrey J. Zucchi, of Clark, Justen & Zucchi, Ltd., of Rockford, for appellant.

D. Phillip Kesler, of Kim MacCloskey & Associates, of Rockford, for appellee.

JUSTICE JORGENSEN delivered the opinion of the court:

On May 24, 2006, the trial court dismissed for want of prosecution plaintiff Christopher S. Mills's personal injury complaint. On October 19, 2007, Mills filed a petition for relief from judgment (735 ILCS 5/2—1401 (West 2006)), and defendant Ryan D. McDuffa filed a response brief. The court granted the petition after reviewing the record and listening to argument. McDuffa appealed. Because the court's grant of relief to Mills was functionally equivalent to a grant of

summary judgment on his section 2—1401 petition, and because Mills did not establish that he was entitled to such relief as a matter of law, we reverse and remand.

## I. BACKGROUND

On May 24, 2004, Mills, through his attorney Robert Calgaro, filed a single-count personal injury complaint against McDuffa. According to the complaint, on May 28, 2002, Mills stopped his car at the intersection of Mulford and Spring Creek Roads in Rockford. McDuffa, who had been driving behind Mills, "crashed" into Mills's car. According to a subsequently filed affidavit, Mills suffered severe back and neck injuries requiring surgery.

On July 9, 2004, McDuffa, through his attorneys, answered Mills's complaint. In his answer, McDuffa denied all substantive allegations of negligence and disputed proximate cause between Mills's injuries and the May 2002 accident.

On June 17, 2005, Calgaro withdrew as Mills's attorney and Richard K. VanEvera entered an appearance as Mills's attorney. On June 28, 2005, Judge Janet R. Holmgren entered an order approving the substitution of attorneys. At some point thereafter, the cause was transferred from Judge Holmgren to Judge Ronald L. Pirrello because Judge Holmgren's brother worked at the same law firm as McDuffa's attorney.

On March 6, 2006, VanEvera entered a motion to withdraw as counsel, citing Mills's inability to "make reasonable agreements regarding cooperation and/or the handling of the litigation." On March 20, 2006, Judge Pirrello granted VanEvera's motion to withdraw, gave Mills 30 days to retain new counsel, and required VanEvera to provide Mills notice of the next court appearance, scheduled for April 19, 2006. The record does not indicate whether Mills received notice of the April 19, 2006, hearing.

Mills did not appear at the April 19, 2006, status hearing. The trial court ordered that the cause be continued to May 24, 2006, for further status on the retention of counsel, and it further ordered that, "[i]f [Mills] fails to appear, either *pro se* or by attorney, [the] cause will be dismissed for want of prosecution." The written order did not require that notice of the order be sent to Mills. However, in the subsequently filed response to Mills's section 2—1401 petition, McDuffa's attorney states that he sent a copy of the order to Mills.

Mills failed to appear at the May 24, 2006, status hearing. The trial court ordered that the cause be dismissed for want of prosecution (DWP) and ordered McDuffa's attorney to send a copy of the May 24, 2006, written order to Mills. McDuffa's attorney, again in the

subsequently filed response to the section 2—1401 petition, states that he did so.

On October 5, 2007, Mills met with attorney G. Kimball MacCloskey. On October 19, 2007, Mills, through MacCloskey, filed a section 2—1401 petition for relief from judgment, seeking to reinstate his personal injury complaint. The petition stated that, on May 24, 2004, Mills filed his complaint at law (*i.e.*, the personal injury complaint), that, on March 6, 2006, VanEvera was granted leave to withdraw as Mills's counsel, and that, on May 24, 2006, on the trial court's motion, the case was dismissed for want of prosecution. Mills then stated that he was "suffering from personal and emotional issues which made it difficult for him to understand the implications to his lawsuit of his attorney withdrawing." In support of his petition, Mills attached an affidavit stating the same.

On November 27, 2007, Mills filed a motion for leave to extend time for filing his brief and to reschedule the hearing date, stating that he needed more time to obtain his psychological records. The court granted the motion. On December 11, 2007, Mills filed a brief in support of his petition. In it, he argued that he had a meritorious claim based on the allegations contained in his original complaint, which alleged a rear-end crash. Mills noted that two-car, rear-end crashes are nearly always the fault of the driver striking from behind. Mills further noted, and McDuffa does not now contest, that McDuffa pleaded guilty to negligent driving. Mills asserted that, in light of his documented psychological difficulties, he acted with due diligence in the original action. Moreover, due to his psychological state, he did not understand the ramifications of VanEvera's withdrawal. Mills argued that by retaining new counsel in October 2007 he exercised due diligence in filing the section 2—1401 petition, stating: "[I] began to improve and stopped seeing Dr. [David] Wight on October 26, 2006. One year later, on October 5, 2007[,] [I] sought legal advice for [my] claim. By then [I] had begun to get [my] life back in order and realized [I] actually might have a chance in this case." Mills attached medical records and his affidavit supporting the assertions made in his brief.

On January 7, 2008, Mills supplemented his petition with a letter from his treating psychiatrist, Dr. Wight. In the letter, Dr. Wight stated that he initially treated Mills at the Wight Care Clinic on July 22, 2005; August 11, 2005; September 8, 2005; December 22, 2005; and May 4, 2006. During this time, Dr. Wight treated Mills for depression, obsessive-compulsive disorder, and attention deficit hyperactivity disorder (inattentive type). These disorders caused Mills to suffer anxiety, dysphoria, intermittent anhedonia, distractibility, and

diminished multitasking and organizational skills. Mills also suffered from generalized and situational anxiety. During this period Mills's anxiety and depression worsened due to the "enormous amount of stress" he endured in caring for his aunt, who had recently had a stroke and was diagnosed with breast cancer. Mills also reported chronic pain, reduced mobility, and cervical vertebra damage due to the motor vehicle accident. Dr. Wight knew Mills to be receiving treatment also by therapist Kevin Polky during this time. Dr. Wight opined that Mills's personality structure was such that his obsessive-compulsive condition was chronic and that he would be working with Polky on that issue.

Dr. Wight also stated in the letter that he evaluated Mills on December 20, 2007, before preparing the letter. He further stated that Mills had a genetic predisposition to his above-mentioned disorders and that situational stressors exacerbated his condition, causing "decompensation acutely and chronically." Dr. Wight believed that Mills had not stabilized to the point where he could sustain gainful employment. Dr. Wight summarized:

"Unless [Mills] is stabilized, *** it would be very challenging for him to return to work in the near future. If his pain can be brought under control and he can maintain emotional stability as well as cognitive stability, it certainly is possible that at a later point in time, his employability and ability to work and maintain a normal life may be realized. However, at this point, secondary to the above, I feel that this is not the case. *** Hopefully, with ongoing therapy with Kevin Polky and medication management, as well as aggressive pain management, his functionality will increase. However, this remains to be seen at this point in time."

The medical records attached to Mills's brief indicate that Mills was taking the following medications: Wellbutrin, Ambien, and Lexapro. It appears that Mills was taking Wellbutrin and Ambien from 2005 through 2008 and that he began taking Lexapro in 2006, though it is unclear whether he continued to take Lexapro through 2008.

On January 23, 2008, McDuffa filed a response brief in opposition to Mills's section 2—1401 petition. In it, McDuffa argued that Mills did not establish, as required by section 2—1401, that he was diligent both in pursuing his original action and in filing the section 2—1401 petition. As to Mills's diligence in the original action, McDuffa states that Mills did nothing to advance his case other than go through two attorneys, one of whom withdrew on June 17, 2005, and one of whom withdrew on March 20, 2006. McDuffa notes that, after the second attorney's withdrawal, Mills failed to appear at the April 19 and May 24, 2006, status hearings. McDuffa further notes that, after the DWP on

May 24, 2006, Mills did nothing to reinstate the case under section 13—217 of the Code of Civil Procedure, which allows a plaintiff one year from the date of dismissal to refile the case. 735 ILCS 5/13—217 (West 2006). As to Mills's diligence in filing the section 2—1401 petition, McDuffa notes that, although section 2—1401 was triggered on May 24, 2007, one year after the DWP, Mills waited until October 2007 to secure another attorney and pursue his petition. McDuffa further argued that Mills's mental state was not a reasonable excuse for failing to act within the appropriate time, because: (1) Mills's mental condition did not rise to the level of a legal disability; and (2) as demonstrated by Dr. Wight's letter, the time during which Mills suffered from his mental condition did not coincide with the time during which Mills failed to diligently pursue both the original action and the section 2—1401 petition.

On March 11, 2008, the trial court granted Mills's section 2—1401 petition for relief from judgment. The record contains no transcript of the oral argument. In its written order, the court stated, "After hearing oral argument and reading the briefs submitted by the parties, the court *exercises its discretion* and grants [Mills's] motion [for relief from judgment pursuant to section 2—1401.]" (Emphasis added.) McDuffa moved to file an agreed statement of facts in lieu of a bystander's report, but Mills never signed it and the court denied it. This appeal followed. At oral argument before this court, the parties agreed that the trial court never held an evidentiary hearing.

## II. ANALYSIS

McDuffa argues that the trial court "abused its discretion" by implicitly finding that Mills exercised due diligence in the original action and in filing the section 2—1401 petition. As in his response to the section 2—1401 petition, McDuffa cites to the timing of events in this case and the information set forth in Dr. Wight's letter, and asserts that Mills's mental condition did not rise to the level of a legal disability. Both parties assert that we should apply the abuse-of-discretion standard to review the trial court's grant of the section 2—1401 petition in this instance. However, pursuant to *People v. Vincent*, 226 Ill. 2d 1 (2007), we disagree.

Section 2—1401 provides a comprehensive, statutory procedure that allows for the vacatur of a final judgment older than 30 days. 735 ILCS 5/2—1401 (West 2006); *Vincent*, 226 Ill. 2d at 7. The statute requires that a petition be supported by affidavit or other appropriate showing as to matters not of record. *Vincent*, 226 Ill. 2d at 7. It further provides that a petition must be filed not later than two years after the entry of the judgment, excluding time during which the person

seeking relief is under legal disability or duress or the ground for relief is fraudulently concealed. *Vincent*, 226 Ill. 2d at 7. Relief under section 2—1401 is predicated upon proof, by a preponderance of the evidence, of a meritorious claim or defense in the original action and of diligence in pursuing both the original action and the section 2—1401 petition. *Vincent*, 226 Ill. 2d at 7-8, citing *Smith v. Airoom, Inc.*, 114 Ill. 2d 209 (1986).

While the remedy under section 2—1401 is rooted in common-law equity, the General Assembly abolished the common-law writ system and replaced it with the statutory petition. 735 ILCS 5/2—1401(a) (West 2004); *Vincent*, 226 Ill. 2d at 7. Section 2—1401 requires that the petition be filed in the same proceeding in which the original judgment was entered. *Vincent*, 226 Ill. 2d at 7. However, the petition is not a continuation of the original action; it is a new cause of action. *Vincent*, 226 Ill. 2d at 7.

■ Proceedings under section 2—1401 are subject to the usual rules of civil practice. *Vincent*, 226 Ill. 2d at 8. "Section 2—1401 petitions are essentially complaints inviting responsive pleadings." *Vincent*, 226 Ill. 2d at 8. Five types of final dispositions are possible in section 2—1401 litigation: "the trial judge may dismiss the petition; the trial judge may grant or deny the petition on the pleadings alone (summary judgment); or the trial judge may grant or deny relief after holding a hearing at which factual disputes are resolved." *Vincent*, 226 Ill. 2d at 9. The *Vincent* court essentially held that the standard by which we should review the trial court's disposition of a section 2—1401 petition depends upon the manner in which it was disposed. See *Vincent*, 226 Ill. 2d at 15-17.

■ In *Vincent*, the court first addressed the question of whether a properly served section 2—1401 petition may be disposed of without the benefit of responsive pleadings and without giving the petitioner notice of the impending ruling and the opportunity to address the trial court prior to the ruling. *Vincent*, 226 Ill. 2d at 5. The court held that, as proceedings under section 2—1401 are subject to the normal rules of civil practice, responsive pleadings are no more required in section 2—1401 proceedings than they are in any other civil action. *Vincent*, 226 Ill. 2d at 9. The State's failure to answer the petition simply constituted an admission of all well-pleaded facts, making the issue ripe for adjudication. *Vincent*, 226 Ill. 2d at 9-10. Likewise, the trial court was not required to provide the petitioner with notice before *sua sponte* dismissing the petition. *Vincent*, 226 Ill. 2d at 12-13. The *Vincent* court characterized the trial court's *sua sponte* dismissal of the section 2—1401 petition as "the functional equivalent of a dismissal for failure to state a cause of action." *Vincent*, 226 Ill. 2d at 14. The

court further stated that, as with any dismissal or judgment on the pleadings, the dismissal of the section 2—1401 petition should be subject to *de novo* review. *Vincent*, 226 Ill. 2d at 14, citing *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005) (where a trial court enters judgment on the pleadings or dismisses a complaint, the standard of review is *de novo*).

The *Vincent* court recognized that *de novo* review conflicted with prior case law, which applied an abuse-of-discretion standard to all section 2—1401 rulings. *Vincent*, 226 Ill. 2d at 14, citing *Klein v. La Salle National Bank*, 155 Ill. 2d 201, 206 (1993), and *People v. Sanchez*, 131 Ill. 2d 417, 420 (1989). Indiscriminate application of the abuse-of-discretion standard, without regard to the manner in which the section 2—1401 petition was disposed, was the result of an erroneous belief that a section 2—1401 petition invoked the equitable powers of the court. *Vincent*, 226 Ill. 2d at 15. "The observation was certainly true when such relief was available under the common law writs. But it was from this general statement regarding the statute's equitable origins that courts incorrectly continued to hold that the new *statutory remedy* was still a matter of judicial discretion and thus subject to an abuse of discretion review on appeal." (Emphasis in original.) *Vincent*, 226 Ill. 2d at 15 (abrogating, among others, *Elfman v. Evanston Bus Co.*, 27 Ill. 2d 609 (1963)). When the legislature abolished the common-law writs in favor of the statutory remedy, it became inaccurate to continue to view the relief in strictly equitable terms, to be awarded at the trial court's discretion. *Vincent*, 226 Ill. 2d at 16. Because relief is no longer purely discretionary and instead is governed by the rules of civil practice, it would be incorrect to continue to apply in all instances an abuse-of-discretion standard of review. *Vincent*, 226 Ill. 2d at 16.

The *Vincent* court held that the *de novo* standard of review applies to section 2—1401 dispositions where the trial court either dismisses the petition or grants or denies relief based on the pleadings alone. *Vincent*, 226 Ill. 2d at 16. As to the remaining types of dispositions possible in section 2—1401 litigation, *i.e.*, grant or denial of relief after an evidentiary hearing, the court stated that "[c]oncerns about the proper standard of review applicable to those dispositions must necessarily await other cases." *Vincent*, 226 Ill. 2d at 17. However, the court submitted that "the touchstone of such future analyses will be *** grounded in the notion that each of the dispositions available in a section 2—1401 action is borrowed from our civil practice and pleadings rules." *Vincent*, 226 Ill. 2d at 17.

■ Pursuant to *Vincent*, in order to determine the proper standard of review we must first characterize the manner in which the trial

court here disposed of the petition. Mills submitted his petition, a supporting affidavit, medical records, a letter by Dr. Wight, and a supporting brief. McDuffa submitted a response brief in opposition to Mills's petition, stating that Mills did not establish that he suffered from a legal disability that may have excused his behavior and requesting that the court enter a judgment denying the section 2—1401 petition. The trial court read the petition, accompanying documentation, and briefs and listened to oral argument by the parties before granting Mills's section 2—1401 petition. The court did *not* hold an evidentiary hearing, and neither party asked for one. Both parties seemed to argue that they were entitled to judgment based on the pleadings and the supporting documents. Thus, the parties' filings with the court were functionally equivalent to cross-motions for summary judgment, and the court's disposition of Mills's section 2—1401 petition was functionally equivalent to a grant of summary judgment to Mills. We review grants of summary judgment *de novo. Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196, 201 (2008); see also *Vincent*, 226 Ill. 2d at 14, 16-17.

Summary judgment is appropriate only when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2—1005 (West 2006); *Ioerger*, 232 Ill. 2d at 201. In reviewing a grant of summary judgment, we must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the nonmoving party. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Summary judgment is a drastic means of disposing of a case and should not be granted unless the movant's right to judgment is clear and free from doubt. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007).

The sole function of the trial court in acting upon a motion for summary judgment is to determine whether a question of material fact exists, not to resolve the issue. *Herrschner v. Xttrium Laboratories, Inc.*, 26 Ill. App. 3d 686 (1975). In deciding a motion for summary judgment, the court may draw inferences from undisputed facts to determine whether a genuine issue of material fact exists. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 272 (1992). However, where reasonable persons could draw divergent inferences from undisputed facts, the issue should be decided by a trier of fact and the motion for summary judgment should be denied; the trial court does not have any discretion in deciding the matter on summary judgment. *Loyola*, 146 Ill. 2d at 272.

Where parties file cross-motions for summary judgment, they invite the court to decide the issues as questions of law, and entry of summary judgment for one party or the other may be proper. *Gianetti v. Angiuli*, 263 Ill. App. 3d 305, 312 (1994). However, even where parties file cross-motions for summary judgment, the court is not obligated to grant summary judgment. *Kellner v. Bartman*, 250 Ill. App. 3d 1030, 1033 (1993). It is possible that neither party alleged facts, even if undisputed, that were sufficient to warrant judgment as a matter of law. See generally 735 ILCS 5/2—1005 (West 2006). It is also possible that, despite the parties' invitation to the court to decide the issues as questions of law, a genuine issue of material fact may remain. See *Gianetti*, 263 Ill. App. 3d at 312.

In determining whether the trial court here properly granted section 2—1401 relief to Mills, we first note that it erred in basing its relief on an exercise of discretion. In granting the section 2—1401 petition, the court stated, "After hearing oral argument and reading the briefs submitted by the parties, *the court exercises its discretion* and grants [Mills's section 2—1401 petition]." (Emphasis added.) As we have stated, it is not appropriate to view section 2—1401 relief in strictly equitable terms, to be awarded at the court's discretion; instead, section 2—1401 relief is to be awarded pursuant to the rules of civil practice.

■ Further, Mills did not establish by his pleading and supporting material that he was entitled to judgment as a matter of law. Even though McDuffa has not submitted any documentation to controvert the information contained in Dr. Wight's letter, reasonable minds could draw divergent inferences from statements made in Dr. Wight's letter, precluding judgment as a matter of law to either party. See *Loyola*, 146 Ill. 2d at 272. For instance, Dr. Wight mentioned that Mills cared for his aunt who had cancer when his case was dismissed for want of prosecution. On one hand, a reasonable person could infer that, if Mills had the wherewithal to care for a sick relative, he had the ability to actively participate in his own case. While Mills's treatment of his aunt is commendable, his decision to care for her could be said to reflect his priorities during a difficult time, not an inability to pursue his claim. He could have explained his situation to the trial court, but he chose not to. On the other hand, a reasonable person could infer that caring for his sick aunt caused Mills's mental status to worsen. Dr. Wight stated that situational stressors exacerbated Mills's condition, causing "decompensation, acutely and chronically." This statement, along with Dr. Wight's other statements concerning Mills's instability, could lead a reasonable person to infer that Mills was not capable of pursuing litigation.

Likewise, McDuffa has not established that the section 2—1401 petition should have been denied based on the pleadings and supporting documents alone. Again, McDuffa contends that Mills's mental condition was not a reasonable excuse for his apparent lack of diligence, because: (1) Mills's mental condition did not rise to the level of a legal disability; and (2) the time during which Mills suffered from his mental condition did not coincide with the time during which Mills failed to diligently pursue both the original action and the section 2—1401 petition. As to his contention that Mills's mental condition did not rise to the level of a legal disability, McDuffa notes that a person with a legal disability must be " 'entirely without understanding or capacity to make or communicate decisions regarding his person and totally unable to manage his estate or financial affairs.' " (Emphasis omitted.) *Selvy v. Beigel*, 309 Ill. App. 3d 768, 776 (1999), quoting *Sille v. McCann Construction Specialties Co.*, 265 Ill. App. 3d 1051, 1054-55 (1994).

McDuffa's first argument improperly assumes that only a mental condition that constitutes a legal disability could excuse Mills's behavior. *Selvy*, upon which McDuffa seems to rely, is distinguishable. In *Selvy*, the defendant filed a section 2—1401 petition seeking relief from a default judgment that had been entered against him more than six years prior. The defendant argued that his "legal disability" tolled the two-year limitations period set forth in section 2—1401(c) (735 ILCS 5/2—1401(c)). The court held that the defendant's hardships, which included his advanced age (83) and a leg fracture that required a 10-month hospital stay, did not rise to the level of legal disability so as to toll the section 2—1401 limitations period. *Selvy*, 309 Ill. App. 3d at 776. Here, the parties agree that Mills filed his section 2—1401 petition within the two-year period following the date the DWP became final. Hence, unlike the petitioner in *Selvy*, Mills was not required to establish that his mental illness rose to the level of a legal disability so as to toll the limitations period, but was merely required to establish the reasonableness of his actions within the limitations period.

As to his argument concerning the timing of Mills's mental condition, McDuffa contends that, because Dr. Wight stated in his affidavit that he last treated Mills on May 4, 2006 (several weeks before the DWP), and because Mills himself stated in his brief that he began to improve by fall 2006, Mills was capable of following his own case, appearing at the April 19 and May 24, 2006, hearings, and reinstating the case under section 13—217. See 735 ILCS 5/13—217 (West 2006) (allowing plaintiff one year from the date of dismissal to refile the case); *Flisk v. Central Area Park District*, 203 Ill. App. 3d 253, 256 (1990) (it is the duty of every litigant to follow the process of litigation

to which he or she is a party). This argument regarding the time frame of Mills's condition presents questions of fact, specifically, whether and to what degree Mills was capable of following and participating in his own case during the time at issue.

"Where a material issue of fact exists, summary judgment is inappropriate and an evidentiary hearing—a trial in effect—is required in ruling on the [section 2—1401] petition." *Vincent*, 226 Ill. 2d at 9. Thus, we remand to the trial court for an evidentiary hearing on Mills's section 2—1401 petition.

## III. CONCLUSION

For the aforementioned reasons, we reverse the judgment of the circuit court of Winnebago County and remand for proceedings consistent with this opinion.

Reversed and remanded.

BURKE and HUDSON, JJ., concur.