2022 IL App (2d) 210434-U
No. 2-21-0434
Order filed September 21, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF TODD KALIS, | ) | Appeal from the Circuit Court |
| | ) | of Lake County |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 20-D-76 |
| | ) | |
| HYEOK KALIS, | ) | Honorable |
| | ) | David C. Lombardo, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Presiding Justice Brennan and Justice Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Trial court did not err in denying appellant's section 2-1401 motion to vacate default judgment for dissolution of marriage without an evidentiary hearing.

¶ 2                              I. BACKGROUND

¶ 3    This case involves the dissolution of the 23-year marriage of Todd and Hyeok Kalis. A default judgment was entered on Hyeok's counter-petition for dissolution of marriage. Todd filed a motion to vacate the judgment pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2020)), contending that he had "various meritorious defenses including

but not limited to the claims and findings of dissipation, division of the estate, his health, and his current inability to work." The trial court denied his motion. For the reasons that follow, we affirm.

¶ 4                    A.  Dissolution of Marriage Proceedings

¶ 5      Hyeok and Todd were married on August 9, 1997, and had three children, all of whom are now over 18 years old. Todd initiated the divorce proceedings when he filed a petition for dissolution of marriage on January 15, 2020. At that time, Todd's attorney of record was the law firm of Katz, Goldstein, and Warren (the Katz firm). Hyeok filed her response to Todd's petition and her counter-petition for dissolution on February 24, 2020.

¶ 6      On or around January 27, 2020, an incident occurred between the two parties at the marital residence, and as a result, Hyeok filed a criminal complaint of domestic battery against Todd. Hyeok also filed an emergency petition for order of protection against him. On February 25, 2020, the parties entered into an "Agreed Mutual Restraining Order" wherein Hyeok withdrew her emergency petition, the parties agreed to have no contact and to otherwise refrain from knowingly coming or remaining within 100 feet of one another, Hyeok was granted exclusive possession of the marital residence in Riverwoods, and Todd was granted exclusive possession of the apartment he was renting in Vernon Hills (Vernon Hills apartment).

¶ 7      When Hyeok filed her counter petition, she also filed a "Motion to Maintain Job Search Diary" asking the court to compel Todd to actively seek employment and provide a record of those efforts. She alleged that Todd had been the primary earner throughout the marriage. He had nearly 20 years of experience as a sales representative and consultant in the medical field, and he had received numerous awards and acknowledgements for his exemplary work. He earned $300,000 in 2016 and had been on pace to earn $280,000 in 2018. Hyeok contended that Todd had been unemployed since the summer of 2018 and had made no significant effort towards securing

employment. Hyeok alleged that Todd spent his time traveling, either on his own or with friends, to sporting events, casinos, golf outings, and other recreational trips to locations including New York City and Las Vegas. She argued that Todd had an affirmative obligation to take reasonable steps to seek full-time employment commensurate with his experience to contribute to his own living expenses as well as support their children. This motion was served upon the Katz firm.

¶ 8        On March 18, 2020, Hyeok filed a notice of intent to claim dissipation of marital assets pursuant to section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503(d) (West 2020)). She also filed a petition for rule to show cause based on Todd's failure to produce his verified financial-disclosure statement. Both were served upon the Katz firm.

¶ 9        On May 1, 2020, Hyeok filed an "Emergency Petition for Temporary Restraining Order and Preliminary Injunction," contending that Todd had withdrawn over $300,000 since the breakdown of the marriage, much of it in the days before he filed his petition for dissolution. She contended further that Todd was concealing assets in his possession and control, that he had failed to respond to discovery requests, and that he failed to file his verified financial disclosure statement. She alleged that Todd "threatened and told me that he was 'going to bury me' and that he was going to 'spend' all of our money." She stated that numerous attempts were made to contact Todd and his attorney to request his financial-disclosure statement and to seek the return of the unauthorized withdrawals, but no response had been received. This motion was served upon the Katz firm.

¶ 10      On May 7, 2020, the trial court granted Hyeok's emergency petition, enjoining Todd from transferring, encumbering, concealing, or otherwise disposing of marital property except in the ordinary course of business until further order of the court, ordering him to file a verified financial-disclosure statement, and ordering him to provide, within seven days, an accounting of all money

in his control during the alleged dissipation period. According to the order, counsel for both parties appeared and presented argument via telephone.

¶ 11     Also on May 7, 2020, the Katz firm filed a motion to withdraw as Todd's counsel. The firm indicated that notice was sent to Todd at the Vernon Hills apartment which was described as his "last known mailing address."

¶ 12     On May 12, 2020, Hyeok filed a second petition for rule to show cause against Todd for his failure to comply with the May 7, 2020, order. In the petition, she noted that Todd had "failed to provide Hyeok with a single shred of documentation since the inception of this over three (3) month litigation so as to allow Hyeok with some semblance of transparency into his finances and excessive spending." This motion was served upon the Katz firm.

¶ 13     An order was entered on May 14, 2020, addressing certain pending matters, including the second petition for rule to show cause, the motion to withdraw filed by Todd's attorneys, and Hyeok's petition for temporary restraining order and preliminary injunction. According to the order, "counsel for each party appear[ed] via [Zoom] Court Call the Court having conducted the May 13, 2020 court appearance via [Zoom] Court Call." The order further indicated that Todd was provided notice of the May 13, 2020, court appearance, the motion to withdraw, and instructions on how to participate, but he failed to appear in open court or via Zoom court call. According to the order, Todd was enjoined from transferring, encumbering, concealing, or otherwise disposing of any marital property and required to file a verified financial-disclosure statement within seven days. Todd was ordered to provide Hyeok with an accounting of all funds in his control from December 26, 2020, to present. The Katz firm was granted leave to withdraw as counsel for Todd, and Todd was given 21 days to either file his *pro se* appearance or retain new counsel. Other pending matters were continued.

¶ 14    On May 28, 2020, Gary Schlesinger of Schlesinger and Strauss, LLC (Schlesinger firm) filed an appearance on Todd's behalf.

¶ 15    On June 11, 2020, counsel for both parties appeared via Zoom court call for status of pending matters, including the motion to maintain a job diary, the petition for rule to show cause, motion for the parties to file joint 2019 tax returns, motion to compel discovery, the second petition for rule to show cause, and Todd's compliance with the May 7, 2020, order. Over Todd's attorney's objection, Todd was ordered to maintain a job diary and show good faith efforts at obtaining employment. All other matters were continued.

¶ 16    On June 14, 2020, the Schlesinger firm filed a motion to withdraw, and sent notice to Todd via email and to the Vernon Hills address which was described as Todd's "last known address."

¶ 17    On July 20, 2020, Hyeok filed a third petition for rule to show cause for Todd's failure to produce a job diary. Ten days later, she also filed a "Motion for Release of 529 Funds." Hyeok stated that Todd was designated as "owner" of the children's college savings accounts, and two of the three children were enrolled in college and had tuition payments due for the fall semester. Hyeok alleged that she made numerous attempts to contact Todd to compel him to access the accounts and make the tuition payments, but to no avail. In this motion, she acknowledged that she was not aware of Todd's current address and listed the Vernon Hills apartment as his last known address. She stated that when a message is sent to his email address, the following return message is received "This email address is not checked. All emails sent to this email address will not be received." This motion was served upon the Schlesinger firm.

¶ 18    The court granted the Schlesinger firm's motion to withdraw as Todd's counsel on August 10, 2020. Todd was given 21 days to either file his *pro se* appearance or retain new counsel.

¶ 19    On August 25, 2020, a hearing was held on Hyeok's motion for release of 529 college funds. The court noted that Todd was provided with notice of the hearing at his last known address and last known email address, but he failed to appear. The court granted the motion and Hyeok was "designated the 'custodian' and/or 'owner' " of the college savings plans.

¶ 20    On September 1, 2020, Hyeok filed a motion for default judgment, contending that Todd had failed to file his *pro se* appearance or otherwise retain new counsel. The matter was set for hearing on September 9, 2020. The trial court entered an order identifying, according to information from the Schlesinger firm, Todd's last known email address and his last known mailing address (the Vernon Hills apartment) and continuing the matter.

¶ 21    A second motion for default judgment was filed on September 21, 2020, contending that the matter should proceed to a default prove-up on Hyeok's counter-petition for dissolution. This motion was served upon Todd at his last known email address, his Vernon Hills address via certified mail return receipt requested, regular mail, and Federal Express.

¶ 22    On September 30, 2020, the trial court granted Hyeok's second motion for default judgment. The court noted that Todd was provided with notice of the hearing, but he failed to appear; Todd's counsel had been granted leave to withdraw as his attorney of record, and Todd was granted 21 days to file his *pro se* appearance or retain new counsel, but he failed to do either; according to Todd's former counsel, his last known address was the Vernon Hills apartment; Hyeok provided Todd with proper notice of this hearing to his last known address by regular mail, certified mail, and Federal Express. She also sent notice via email to his last known email address. The matter was set for a prove-up hearing on Hyeok's counter-petition for dissolution of marriage on November 2, 2020. This order was sent to Todd's last known email and his Vernon Hills apartment in the same manner as the motion.

¶ 23   At the prove-up hearing, Hyeok testified that Todd initiated the divorce proceedings in this case, but he failed to respond to any discovery requests, financial disclosure orders, and other orders of the court. Todd's income provided the primary support for the family during the marriage. He was employed for approximately 20 years as a sales representative in the medical field focusing on neurology and neuromodulations and received recognition and numerous awards over the years for his performance. Hyeok testified that she is employed in the same field as a senior director of regional sales, earning $300,000 annually. In 2018, Todd did not work for a period of time. In January 2018, he quit his job and accepted a new position at NeuroPace as a therapy consultant, but he resigned that position in April 2018. Todd earned $300,000 in 2016, $185,000 in 2017, and was on track to earn $231,000 in 2018 before he stopped working. Between August 2018 and January 2020, Todd took numerous vacations, including trips to New York, Nevada, California, Texas, Florida, and a motorcycle rally in South Dakota. She described Todd as able-bodied and in good health, and capable of earning an income.

¶ 24   At the time of the prove-up, two of the children were in college with the youngest expecting to attend the following year. Their oldest child had three semesters remaining with an expected cost of $114,711. Their middle child was a freshman at the time and the cost of her four years was expected to be $126,000. The anticipated cost for their youngest to attend the college of his choice was $140,000. Noting that their youngest child was 17 years old at the time of the prove-up, Hyeok asked that she be granted sole decision-making responsibility for him. She did not ask for a specific parenting order to be entered because she expected the parties and the child to make their own decisions in that regard. She asked that child support be reserved. She asked that she be solely responsible for the children's college-education expenses (including their travel expenses and

reasonable and necessary living expenses while at school) and that she be awarded control of the college savings accounts held for the benefit of the children.

¶ 25    Hyeok testified that she and Todd had filed joint income taxes every year with the exception of the 2019 tax year. On February 25, 2020, Todd was ordered to cooperate with filing the couple's 2019 tax return jointly, but he failed to do so. Hyeok stated that she incurred an additional $29,000 in federal tax liability because she had to file as "married, filing separately." Hyeok submitted bank statements and summaries showing that Todd withdrew over $500,000 from their bank account after entry of the May 7, 2020, order enjoining him from doing so. She further testified that Todd took out a $97,000 home equity line of credit on the marital residence on January 11, 2020 (just days before he filed his petition for dissolution of marriage), and interest continues to accrue on that loan. She calculated that Todd had dissipated marital funds totaling over $1 million. It was her testimony that the marriage underwent irretrievable breakdown on February 1, 2019.

¶ 26    She asked the court to value the marital residence at $783,896 based on a realtor estimate, and she acknowledged that a $426,000 balance remained on the mortgage in addition to the $97,000 home equity loan, for which she agreed to take responsibility. She asked to be awarded her own vehicle, a Mercedes GLC, with approximately $20,000 remaining due on the loan, and the Lexus RX350 which is used by the children. She asked that their bank and brokerage accounts be divided so that she would receive approximately $1.669 million, or $1.135 million after applying a 32% tax rate. She asked that maintenance be mutually barred. She asked for no contribution from Todd for her attorney fees.

¶ 27    In entering the default judgment, the court granted Hyeok's requests regarding decision-making responsibility for the youngest child, financial responsibly for the children's education and

other expenses, division of accounts, and award of property. The court also found Hyeok proved Todd had dissipated marital assets totaling $1,044,895.24. The court granted Hyeok's motion that the issue of dissipation be reserved for a period of 30 days so that she could modify the claim, if necessary, within that time period.

¶ 28                        B. Post-judgment Proceedings

¶ 29    Hyeok filed two post-judgment motions, one for entry of a judge's deed to transfer title of the marital residence to her and another for entry of a Qualified Domestic Relations Order (QDRO) to divide certain retirement accounts. Both motions were set for hearing on January 22, 2021.

¶ 30    On January 21, 2021, Todd's new counsel, the law firm of Grund and Leavitt, P.C., filed an appearance.

¶ 31    On January 22, 2021, the court ordered Todd to execute the quit claim deed for the marital residence and continued all remaining matters. Todd filed a response to the motion for entry of a QDRO, objecting to entry of any such order and stating that he intended to move to vacate the default judgment against him.

¶ 32    On March 1, 2021, Todd filed a motion to vacate the November 2, 2020, default judgment of dissolution of marriage pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2020)). He alleged that on January 27, 2020, he was forced to vacate the marital residence after which he secured residency at the Vernon Hills apartment. He stated that when he learned that his father's lung cancer was terminal, he "expressed to Hyeok that given his father's terminal cancer diagnosis he no longer wanted to proceed with the divorce proceedings." He stated that he also told this to his attorney at the time, but "the instant proceedings were never dismissed." He alleged that in May 2020, he was charged with a misdemeanor resulting from an altercation at his Vernon Hills apartment. As a result, he was given 24 hours' notice to move out of his apartment. He stated

that he gave notice to his criminal attorney and divorce attorney "that he was no longer living there and was barred from that residence" pursuant to the conditions of his bond in the criminal matter. He alleged that his attorneys knew that he no longer lived at the Vernon Hills apartment, but still sent notices to that location.

¶ 33    Todd alleged that he has a "medical history of strokes, migraines and high blood pressure, that have resulted in permanent medical issues and challenges." He stated that "[i]n addition to the stress of the divorce and being left without any representation, [he] was morally and realistically the only individual able to attempt to assist his father with his cancer treatments." He contended that from March 2020 through January 2021, he drove from Illinois to Minnesota to take his father to chemotherapy treatments, staying in hotels and at his father's house in Mankato, Minnesota. He alleged that, although criminal charges were pending against him in Illinois, he was given permission from pretrial services to travel to Minnesota, and he "was required to check in with Illinois pretrial services and let them know an address where he was staying." As of May 2020, Todd alleges he no longer lived in Illinois. He stated that he only came back to Illinois occasionally, and when he did, he stayed with friends. Todd alleged that he never received proper notice or service in the dissolution proceedings since May 2020.

¶ 34    Todd further asserted that he "has meritorious claims and defenses to that dissipation charge." Todd contends that the parties were still living together, and their marriage did not become irretrievably broken until January 2020. He contends in 2019, they went out with other couples to dinner and comedy clubs and traveled to the Cayman Islands together as a family in July 2019. He stated that in December 2019, Hyeok took him to the hospital to receive treatment for gout. He stated that they hosted a family New Year's Eve party at the marital residence. He

contends that "Many, if not most of the withdraws contained in the dissipation section of the Default Judgment were in 2019 and prior to the marriage irretrievably breaking down."

¶ 35     Todd stated that he only learned of the Default Judgment in December 2020, and that equity requires that the judgment be vacated so that he may present his "various meritorious defenses including but not limited to the claims and findings of dissipation, division of the estate, his health, and his current inability to work."

¶ 36     In response, Hyeok filed a section 2-615 motion to dismiss the petition (735 ILCS 5/2-615 (West 2020)). She argued that Todd failed to plead any facts establishing a meritorious defense or that he acted with due diligence in the underlying action. Todd filed a response; Hyeok filed a reply. On June 14, 2021, the trial court denied Hyeok's motion to dismiss and set the matter for hearing.

¶ 37     On June 24, 2021, Hyeok filed a response to Todd's section 2-1401 motion to vacate, and Todd filed a reply.

¶ 38     At the hearing on June 28, 2021, Todd's attorney argued that the due diligence requirements should be eased because of Todd's health problems, his "issues with the law," and the fact that he was traveling between Illinois and Minnesota to care for his father. He also argued that notice of the filings and orders were sent to "the wrong address" (referring to the Vernon Hills apartment) and to "an email address that Todd had used but was no longer using." Hyeok's attorney argued that Todd did not demonstrate due diligence. He noted that Todd initiated the underlying dissolution proceedings and had been represented by counsel during most of the pendency of the case. Further, Todd provided no explanation as to why he no longer checked his email and provided no alternative email address. Furthermore, there is evidence in the record (namely, an email attached to his motion to vacate) that reveals that Todd had accessed his email as recently as

February 2021. Todd also never provided any explanation as to why he did not provide an updated mailing address to Hyeok, his attorneys, or the court.

¶ 39     After hearing argument of the parties, the trial court entered an order denying Todd's section 2-1401 motion to vacate, finding that Todd failed to establish that he had a proper meritorious claim or defense or that he exercised due diligence in support of his motion to vacate. The court noted that Todd was "deliberately withholding and deliberately ignoring his case," and that he could have checked his email if he wished to do so. Todd had a duty to keep everyone advised as to his contact information, but he failed to provide an updated email address or mailing address. The court found "It appears he attempted to avoid this litigation by running away from it, depriving [Hyeok] the opportunity to have her day in court.  Well, she did have her day in court." This appeal followed.

¶ 40                                    II. ANALYSIS

¶ 41     At issue in this appeal is whether the summary dismissal of Todd's section 2-1401 petition without conducting an evidentiary hearing was proper.

¶ 42     Section 2-1401 of the Code provides a comprehensive statutory scheme for obtaining relief from a final judgment when 30 days or more have elapsed since its entry. See 735 ILCS 5/2-1401 (West 2020). "The purpose of a section 2-1401 petition is to alert the circuit court to facts which, if they had been known at the time, would have precluded entry of the judgment." *In re Marriage of Goldsmith*, 2011 IL App (1st) 093448, ¶ 14 (citing *People v. Haynes*, 192 Ill. 2d 437, 461 (2000)). Such proceedings, however, are not intended to give the party a new opportunity to do that which should have been done in an earlier proceeding or to relieve the party of the consequences of his or her mistakes or negligence.  *Goldsmith*, 2011 IL App (1st) 093448, ¶ 14 (citing *In re Marriage of Himmel*, 285 Ill. App. 3d 145, 148 (1996)). Therefore, to be entitled to

relief under section 2-1401, a petitioner must set forth specific factual allegations showing the existence of a meritorious claim or defense, demonstrate due diligence in presenting the claim to the circuit court in the original action, and act with due diligence in filing the section 2-1401 petition. *In re Marriage of Buck*, 318 Ill. App. 3d 489, 493 (2000). The petition must be supported by affidavit or other appropriate showing as to matters not of record. 735 ILCS 5/2-1401(b) (West 2020).

¶ 43    In proceedings under section 2-1401, there are five possible final dispositions: "the trial judge may dismiss the petition; the trial judge may grant or deny the petition on the pleadings alone (summary judgment); or the trial judge may grant or deny relief after holding a hearing at which factual disputes are resolved." *People v. Vincent*, 226 Ill. 2d 1, 9 (2007). The standard of review on appeal depends upon the manner in which the petition was disposed. *Vincent*, 226 Ill. 2d at 15-17. "Where a circuit court's disposition of a section 2-1401 petition is functionally equivalent to a grant or denial of summary judgment, [a reviewing] court will review the circuit court's ruling under the same standard as [it] would a ruling on a motion for summary judgment." *R.M. Lucas Co. v. Peoples Gas Light & Coke Co.*, 2011 IL App (1st) 102955, ¶ 12. In this case, Todd filed a section 2-1401 petition with his supporting affidavit attesting to the allegations in the petition. Hyeok filed a section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2020)), which was denied. Thereafter, Hyeok submitted a response in opposition to the section 2-1401 motion, the parties engaged in oral argument, and no evidentiary hearing was held. Because the trial court's denial of Todd's section 2-1401 petition was the functional equivalent of a grant of summary judgment, we will review it as such. See *R.M. Lucas Co.*, 2011 IL App (1st) 102955, ¶ 12.

*¶ 44*    Summary judgment is proper where the pleadings and other evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law. See 735 ILCS 5/2-1005(c) (West 2020). The purpose of summary judgment is not to try a question of fact, but to determine whether a triable question of fact exists. *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 14. Our review is *de novo. Lewis,* 2020 IL 124107, ¶ 15.

¶ 45     In this case, Todd argues that he presented a meritorious defense to the underlying decision regarding dissipation of assets, namely the date of irreconcilable breakdown of the marriage for the purpose of finding dissipation of assets. He argues further that the court's ruling "completely ignored the fact that central to Todd's section 2-1401 claim is that his mental health was suffering under severe and debilitating mental stress that was aggravated by his physical condition, which prevented him from participating in the dissolution proceedings." He contends that his "severe and debilitating mental condition" was caused by a "myriad [of] stressors in his life," including his father's terminal illness, the breakdown of his marriage, the divorce, and the pending criminal charges, his "terrible physical condition" (claiming chronic medical problems from a stroke he suffered in 2018, "almost suffering a second stroke," and his gout), and his attorneys abandoning him. Todd argues that this "constitute[d] the existence of a meritorious defense and excuse[d] Todd from any apparent lack of due diligence." Relying upon *Mills v. McDuffa*, 393 Ill. App. 3d 940 (2009), he contends that a mental condition could excuse a litigant's apparent lack of due diligence in the proceedings underlying a section 2-1401 petition.

¶ 46     Due diligence requires a section 2-1401 petitioner to have a reasonable excuse for failing to act within the appropriate time. "Since section 2-1401 does not afford a litigant a remedy whereby he may be relieved of the consequences of his own mistake or negligence, a party relying on section 2-1401 is not entitled to relief 'unless he shows that through no fault or negligence of his own, the error of fact or the existence of a valid defense was not made to appear to the trial court.' " *Smith v. Airoom, Inc.,* 114 Ill. 2d 209, 222 (1986) (quoting *Brockmeyer v. Duncan*, 18 Ill.

2d 502, 505 (1960)). The "petitioner must show that his failure to defend against the lawsuit was the result of an excusable mistake and that under the circumstances he acted reasonably, and not negligently, when he failed to initially resist the judgment." *Smith*, 114 Ill. 2d at 222. In determining the reasonableness of the excuse offered by the petitioner, all of the circumstances surrounding entry of the judgment must be considered, including the conduct of the litigants and their attorneys. *Smith*, 114 Ill. 2d at 222-23.

¶ 47    After reviewing the record, we find that there is no genuine issue of material fact as to whether Todd acted with due diligence. His failure to defend against the counter-petition for dissolution of marriage was not the result of an excusable mistake, but was, instead, due to his own conduct. Todd initiated these proceedings when he filed his petition for dissolution of marriage in January 2020. As such, he subjected himself to the jurisdiction of the trial court and had an obligation to follow the progress of his case. See *Esczuk v. Chicago Transit Authority*, 39 Ill. 2d 464, 467 (1968) ("It has been long held that once a court acquires jurisdiction, it is the duty of the litigants to follow the case."); *Flisk v. Central Area Park District,* 203 Ill. App. 3d 253, 256 (1990) (noting there are "numerous Illinois decisions holding that it is the duty of every litigant to follow the progress of litigation to which they are a party, and that the misdeeds of their attorney do not excuse them from this obligation."). Despite this obligation, the record reveals that Todd ignored the case and made no efforts to engage in the litigation or abide by the trial court's orders.

¶ 48    From January 15, 2020 (when he filed his petition) until May 14, 2020, he was represented by the Katz firm. During this time, he received notice of numerous court status dates, orders, and court filings, including: a motion for Todd to maintain a job search diary and Hyeok's answer and counter-petition for dissolution of marriage (February 24, 2020); notice of Hyeok's intent to claim dissipation (March 18, 2020); motion for the parties to file joint 2019 tax returns and petition for

rule to show cause for Todd's failure to file a financial disclosure affidavit (March 20, 2020); motion to compel discovery (April 24, 2020); an emergency petition for temporary restraining order and preliminary injunction against Todd for withdrawing substantial amounts of marital funds and willfully concealing the disclosure of assets (May 1, 2020); and a second petition for rule to show cause for failure to file a financial disclosure statement and an accounting of funds as required by court order (May 12, 2020). From May 28, 2020, until August 10, 2020, Todd was represented by the Schlesinger firm. During this time, he received notice of court dates as well as notice of numerous court filings, including: petition for attorney fees from the Katz law firm (June 3, 2020); a third petition for rule to show cause for Todd's failure to comply with court orders (July 20, 2020); and a motion seeking release of funds from college savings accounts (of which Todd was the custodian) to pay for their children's college tuition (July 30, 2020). In his section 2-1401 petition, Todd admitted that in March 2020, he told Hyeok that he no longer wanted to proceed with the divorce proceedings. It is apparent from the record he took it upon himself to stop participating and ignore the case.

¶ 49 Todd's assertions that he was suffering from a "severe and debilitating mental condition" to justify his failure to engage in the divorce proceedings is not supported by the record. A party seeking to vacate a judgment pursuant to section 2-1401 must support the assertions by affidavit or other appropriate showing as to matters not of record. 735 ILCS 5/2-1401(b) (West 2020). In this case, Todd claimed that he was under "severe stress" and has "a medical history of strokes, migraines and high blood pressure, that have resulted in permanent medical issues and challenges." However, he failed to support these assertions, which are clearly not of record in this case. In this regard, *Mills v. McDuffa*, 393 Ill. App. 3d 940 (2009), the case relied upon by Todd to support his assertions that his purported mental condition should excuse his lack of due diligence, is

distinguishable. In *Mills*, the petitioner filed a section 2-1401 petition seeking to vacate the dismissal of his personal-injury complaint for want of prosecution. In support, the petitioner included a letter from his treating psychiatrist explaining that the petitioner suffered from numerous conditions (including depression, anxiety, and obsessive-compulsive disorder), which were purportedly exacerbated by the physical injuries and stress of the accident, as well as medical records identifying medications the petitioner was taking. *Mills*, 393 Ill. App. 3d at 943-44. The trial court granted the petition without holding an evidentiary hearing. This court reversed finding that the timeframe of the petitioner's mental condition presented questions of fact in that case which warranted a hearing. *Mills*, 393 Ill. App. 3d at 950-51. In this case, there is no such support for Todd's assertions that he suffers from a debilitating mental condition that caused him to be unable to participate in the underlying divorce proceedings which he initiated.

¶ 50 Furthermore, although Todd alleged that he was suffering from severe stress and medical issues, he did not allege in his petition or otherwise make any showing that any such illness prevented him from participating in the divorce proceedings. Todd alleged that he had to travel between Illinois and Minnesota to care for his father who was undergoing cancer treatments. Again, he did not allege or otherwise make any showing that these travels impaired his ability to participate in the underlying proceedings. Similarly, Todd stated that he was forced to leave his Vernon Hills apartment because "he was charged with a misdemeanor stemming from an altercation" at that apartment. However, he did not allege or otherwise make any showing that (1) this caused him to be unable to participate in the divorce proceedings or (2) he was unable to provide an updated address to the court, Hyeok, or his attorneys when this occurred.

¶ 51 We note that when arguing his motion before the trial court, Todd asserted that he did not receive notice of the divorce proceedings, including his own attorneys' motions to withdraw,

because notice was sent to his email address which he no longer used and a mailing address (the Vernon Hills apartment) where he no longer lived after May 2020. On appeal, Todd does not raise this argument. In fact, he repeatedly states that the "central issue" in this appeal is that his mental health prevented him from participating in the divorce proceedings. As such, any argument regarding notice has been forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 52     We acknowledge that section 2-1401 relief invokes the equitable powers of the court. See *Smith*, 114 Ill. 2d at 225. As such, a default judgment may be vacated even though the requirement of due diligence has not been satisfied "where justice and good conscience may require it." *Smith*, 114 Ill. 2d at 225. This is not such a case. We cannot condone Todd's complete failure to engage in the underlying dissolution case. Todd instigated the underlying proceedings; he was represented by counsel during the majority of time the underlying case was pending, including when the notice of dissipation of assets and emergency petition for temporary restraining order and preliminary injunction regarding dissipation of assets were filed; and he had ample opportunity to present these matters prior to entry of the default judgment against him. There is no reasonable excuse for Todd's failure to defend against the counter-petition for dissolution of marriage. Although Todd asserts that he suffers from a mental condition that prevented him from participating in the underlying actions, the record contains no documentation of any kind to support these contentions. Because no genuine issue of material fact exists as to whether Todd acted with due diligence, the trial court's summary dismissal of his section 2-1401 petition without conducting an evidentiary hearing is affirmed.

¶ 53                                         III. CONCLUSION

¶ 54     For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 55     Affirmed.